2003 WY 25

Rudy HERRERA, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Rudy Herrera, Appellant (Defendant),

v.

The State of Wyoming, Appellee
(Plaintiff).

Nos. 00–290, 01–220.

Supreme Court of Wyoming.

Feb. 27, 2003.

Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Senior Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] This is an appeal from the judgment finding appellant Rudy Herrera (Herrera) guilty of kidnapping and its related sentence. Herrera also appeals from the order denying his post-sentence motion to withdraw his guilty plea. We reverse and remand.

## ISSUES

[¶ 2] Herrera sets forth the following issues on appeal:

I. Did the trial court err in refusing to allow appellant to withdraw his guilty plea, both prior and subsequent to sentencing?

II. Did the State breach the plea agreement?

III. Did the prosecutor commit misconduct?

IV. Did the trial court err in refusing to allow appellant to attend the hearing on the motion to withdraw his guilty plea in person?

Appellee State of Wyoming (State) essentially agrees with these issues as stated.

## FACTS

[¶ 3] Herrera was initially charged with one count of first degree sexual assault and one count of "aggravated" kidnapping. Herrera pled not guilty to both charges and was released on bond pending trial. Herrera was later taken into custody concerning an alleged assault and robbery incident and issues regarding violation of conditions of his bond. Thereafter, Herrera's counsel and the prosecutor reached a negotiated plea agreement. The terms of this plea agreement required the State to dismiss the first degree sexual assault charge and reduce the "aggravated" kidnapping charge to "simple" kidnapping, thereby reducing the possible sentence length. The prosecutor also agreed to recommend both a minimum sentence term of five years and a referral to the youth offender program, commonly referred to as boot camp.[1]

[¶ 4] On May 12, 2000, Herrera, his counsel, and the prosecutor appeared for a bond revocation hearing and re-arraignment proceeding. At this time, the district court was made aware of the plea agreement. The district court advised Herrera that it would

---

* Chief Justice at time of expedited case conference.

1. The assault charge pending against Herrera was also to be reduced to a misdemeanor with Herrera receiving credit for time served. In addition, the robbery charge pending against Herrera was to be withdrawn.

"seriously consider the arrangements made between counsel" but would not be bound by them. However, the district court did not specifically advise Herrera that he would not be allowed to withdraw his guilty plea if the district court ultimately rejected the recommendation agreed upon with respect to boot camp as required by W.R.Cr.P. 11(e)(2). Herrera then pled guilty to the sole remaining amended count of kidnapping.[2]

[¶ 5] After a pre-sentence investigation was completed, a sentencing hearing was held on August 4, 2000. At first, the district court assumed that the pre-sentence investigation stated Herrera had committed new offenses since his change of plea. However, this was not the case. The prosecutor explained to the district court that the State was fully aware of and had considered Herrera's alleged new offenses before the negotiated plea agreement had been reached and Herrera changed his plea. Critically, however, when asked by the district court to comment on Herrera's sentence, the prosecutor stated as follows:

Just briefly, Your Honor.

As we've already outlined for the Court, there was a plea agreement in this matter, and I just wanted to point out that the factors that always go into an agreement like that include—but probably the only thing Mr. Herrera has going for him right now, and that is the fact he is a very young age, and that still then demands a recommendation for boot camp.

*I do that with reluctance, however, only trying to abide by the plea agreement so that we don't have to make this into a further legal technicality argument as to whether or not his actions since that agreement were made allow me to change that position.*

I would urge the Court to at least give [Mr. Herrera] a very long sentence, especially the top number so that he can be monitored, and so that if he does not make it through boot camp and/or the probation following that, we can have some time to make sure he is held accountable.

It is very disturbing to the State as it was to the presentence report writer that Mr. Herrera entered this agreement, came in, pled guilty, essentially accepting responsibility for his actions, and then told the presentence report writer that it was all a big lie, that [the alleged victim] made it all up, and that her mother put her up to it.

The State finds that extremely offensive, and a very serious indication Mr. Herrera is not accepting any responsibility at all, and that he will not successfully complete any sentence that this Court gives him.

(Emphasis added.)

[¶ 6] Following this statement, Herrera's counsel made an oral motion to withdraw the guilty plea based on the prosecutor's breach of the plea agreement. In particular, counsel for Herrera objected to the prosecutor only "reluctantly" recommending boot camp. Counsel argued such comments implied to the district court that, while the State technically recommended boot camp, it really did not want the district court to follow through with this recommendation. Defense counsel further asserted that by taking these actions the prosecutor had, in essence, breached the negotiated settlement agreement. Defense counsel also clarified that Herrera was before the district court to be sentenced solely on the kidnapping charge; therefore, it was improper for the prosecutor to infer that Herrera was to be sentenced on any related sexual assault.[3] This oral motion was summarily denied by the district court, and the district court proceeded to sentence Herrera to a term of six to nine years in the Wyoming State Penitentiary.

[¶ 7] Herrera appeals the judgment and sentence. Additionally, Herrera filed a post-

2. The State subsequently filed a Motion for Dismissal concerning the first degree sexual assault charge which was granted by the court.

3. The alleged victim was allowed to speak at length at sentencing and address what had occurred to her during the incident, her involvement with Herrera, and how she had been ad-versely affected by these circumstances. The record reflects the district court's reaction and statements made regarding these comments. In fact, even after the pre-sentence oral motion to withdraw guilty plea made by Herrera, the district court continued to comment on the statements made by the alleged victim.

sentence motion to withdraw the guilty plea. After a hearing, the district court issued a decision letter and order denying the post-sentence motion. Herrera also appeals that order. These appeals were thereafter consolidated by this court.

## STANDARD OF REVIEW

[¶ 8] When a plea of guilty rests to any significant degree on a promise or agreement by the State, that promise must be fulfilled. Whether the prosecutor has violated the plea agreement is a question that is reviewed de novo. *Clingman v. State*, 2001 WY 46, ¶ 4, 23 P.3d 27, ¶ 4 (Wyo.2001) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *Clouse v. State*, 809 P.2d 791, 795 (Wyo.1991); and *United States v. Robertson*, 45 F.3d 1423, 1442 (10th Cir.1995). *See also Browning v. State*, 2001 WY 93, ¶ 32, 32 P.3d 1061, ¶ 32 (Wyo.2001).

[¶ 9] The standard for withdrawing a guilty plea prior to sentencing is governed by W.R.Cr.P. 32(d). "If a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Similarly, the standard for withdrawing a plea of guilty after sentencing is governed by W.R.Cr.P. 32(d). In such a situation, a guilty plea may be set aside "only to correct manifest injustice."

[¶ 10] Decisions concerning whether a trial court properly denied a motion for withdrawal of a guilty plea, either pre-sentence or post-sentence, are determined under an abuse of discretion standard of review. In deciding whether or not a trial court abused its discretion, this court must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious." *Burton v. State*, 2002 WY 71, ¶ 44, 46 P.3d 309, ¶ 44 (Wyo.2002) (citing *Cook v. State*, 7 P.3d 53, 58–59 (Wyo.2000) and *Vaughn v. State*, 962 P.2d 149, 152 (Wyo.1998)).

## DISCUSSION

### Refusal to Allow Withdrawal of Guilty Plea

[¶ 11] Herrera argues the district court erred when it denied his motions for withdrawal of guilty plea. Initially, Herrera asserts that a fair and just reason existed for allowing him to withdraw his guilty plea prior to sentencing because the prosecutor breached the plea agreement by only "reluctantly" recommending boot camp. According to Herrera, the prosecutor clearly advised the district court, with the intent to sabotage Herrera's chances of obtaining a sentence at boot camp, that she did not think Herrera was an appropriate candidate for boot camp and that she did not think Herrera would complete boot camp. We agree.

[¶ 12] In determining whether a breach has occurred, we: (1) examine the nature of the promise, and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered. Principles of general contract law guide our analysis of the government's obligation under the agreement. It follows that, as in contract, a party should not be released from its obligations under a plea agreement absent another party's material or substantial breach of that agreement. A material or substantial breach is one that affects the whole consideration of the agreement. Several factors are relevant to determine whether a breach is material or substantial, including the extent to which the nonbreaching party will be deprived of the benefit it reasonably expected and the extent to which the breaching party's conduct comports with the standards of good faith and fair dealing. *Browning*, ¶ 32.

[¶ 13] In this instance, we conclude the agreement that the prosecutor would recommend boot camp to be material and substantial. It is obvious that given the young age of Herrera, as pointed out to the district court by the prosecutor, and the immediate reaction of his defense counsel to the prosecutor's unelicited comments, that Herrera believed this element of the plea agreement to be an integral, if not a crucial and imperative, term of the agreement reached.

[¶ 14]   Moreover, we hold the comments made by the prosecutor were delivered to the district court outside the realm of the standards of good faith and fair dealing.   It is apparent by the prosecutor's statements that—while she indicated that she desired to obviate any technical argument and thereby simply wanted to abide by the plea agreement despite any actions of Herrera since the plea agreement was reached—these statements were meant to purely highlight to the district court that she in reality did *not* recommend that the district court sentence Herrera to boot camp.   Indeed, it is unquestionable that the prosecutor clearly intended to sway the district court to proceed in contravention of the very consequential term of the plea agreement concerning boot camp. Accordingly, Herrera was deprived of a determinative benefit he had every right to reasonably expect under the explicit terms of the plea agreement.

[¶ 15]   Further, while the State both argues and infers that this matter should be properly determined through application of our holdings in *Browning v. State,* 2001 WY 93, 32 P.3d 1061 (Wyo.2001), *Clingman v. State,* 2001 WY 46, 23 P.3d 27 (Wyo.2001), *Stowe v. State,* 10 P.3d 551 (Wyo.2000), and *Swingholm v. State,* 910 P.2d 1334 (Wyo. 1996), we do not agree.   We certainly do not wish to in any way abrogate the reasoning utilized in reaching our decisions in those cases.   Rather, we find the facts in those cases to be distinguishable from the facts that exist in this case.   In each of those cases we ultimately concluded that the asserted breach of the plea agreement did not occur or could not be characterized as substantial or material.   In this case, we simply cannot reach that same result.

[¶ 16]   Further, we note although defense counsel for Herrera made a timely and appropriate oral motion to withdraw guilty plea after the comments made by the prosecutor and prior to sentencing, the court summarily denied this motion by merely commenting, "I understand.   That motion is denied."   From review of the transcript, it appears that the district court did not properly consider if Herrera had established a "fair and just reason" for his request requiring that his guilty plea be allowed to be withdrawn.   Accordingly, we hold that the prosecutor violated a material and substantial term of the plea agreement by making the elaborated comments to the district court at sentencing. The district court abused its discretion in denying Herrera's pre-sentence motion for withdrawal of guilty plea because such a withdrawal was required by Herrera's establishment of a "fair and just reason" for withdrawal.[4]

[¶ 17]   In *Mehring v. State,* 860 P.2d 1101, 1109 (Wyo.1993), this court set forth the standard for evaluating the validity of a guilty plea that results from a plea agreement:

   A guilty plea is valid when it " ' "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." ' "   *Osborn [v. State],* 806 P.2d at 271 (quoting *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) and *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)).   See W.R.Cr.P. 11(d) (Former Rule 15(d)).   The acknowledged standard, adopted by the Supreme Court of the United States, to test whether a plea is voluntary states:
   " '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes).' . . . "

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States,* 246 F.2d

---

4.   While we believe that it is appropriate to consider those actions taken by the district court in this case, we want to be absolutely clear that even notwithstanding the actions taken by the district court, the prosecution's failure to abide by an essential term of the plea bargain reached is, in itself, reason mandating reversal and remand in this case.

571, 572 n. 2 (5th Cir.1957), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).

Here, sufficient evidence exists to establish that a valid plea agreement was reached between the parties.

■ [¶ 18] Moreover, it is unmistakably established that a prosecutor must explicitly stand by those terms agreed upon and may not play "fast and loose" with the established terms reached between the parties in a plea agreement. Contrary to this obligation, the prosecutor involved in this case breached the plea agreement by making remarks ·to the district court that violated both the letter and the spirit of the agreement. These remarks were fundamental in nature and seriously affected Herrera.

■ [¶ 19] Finally, we find it appropriate at this time to remind prosecutors that they must comply with specifically enumerated ethical requirements in properly fulfilling their role as prosecutors. As stated in the comments of Wyoming Rules of Professional Conduct For Attorneys At Law, Rule 3.8:

> *[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.*

### CONCLUSION

[¶ 20] For the foregoing reasons, the conviction and sentence is reversed, and this matter is remanded with direction to the district court to grant Herrera's pre-sentence motion to withdraw guilty plea.