2008 WY 79

**Kacey Allan GIBBS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0231.

Supreme Court of Wyoming.

July 14, 2008.

Representing Appellant: Diane Lozano, State Public Defender; Tina Kerin, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Kacey Allan Gibbs (Gibbs), seeks review of the district court's judgment and sentence, asserting that, because the State violated the terms of the plea agreement entered into by the State and Gibbs, Gibbs should be permitted to withdraw his guilty pleas and plead anew. We will affirm.

## ISSUES

[¶ 2] Gibbs raises this issue:

Should the judgment be vacated and [Gibbs] be allowed to withdraw his plea because the prosecutor violated the plea agreement?

The State views the issue differently:

Did [Gibbs] materially and substantially breach the plea agreement when he violated a number of [district] court orders prior to sentencing, thereby releasing the State from its obligations under the plea agreement.

## FACTS AND PROCEEDINGS

[¶ 3] On July 21, 2006, a felony information was filed in Circuit Court for the Sixth Judicial District alleging that on June 16, 2006, Gibbs knowingly defaced, injured or destroyed property of another in violation of Wyo. Stat. Ann. § 6–3–201(a) and (b)(iii) (LexisNexis 2007). On November 13, 2006, a second felony information was filed in that same court, alleging that on October 28, 2006, Gibbs engaged in conduct that constituted felony stalking in violation in Wyo. Stat. Ann. § 6–2–506(b)(i) and (e)(iv) (LexisNexis 2007) and that he entered a motor vehicle with the intent to commit a larceny therein in violation of Wyo. Stat. Ann. § 6–3–301(a) and (b) (LexisNexis 2007). Although never formally consolidated, the two separate criminal actions (and three felony charges) were treated by the district court in a single proceeding.

[¶ 4] Gibbs entered not guilty pleas to the charges described above on September 19, 2006, March 1, 2007, and August 2, 2007, respectively. Gibbs eventually entered into a guilty plea agreement with the State and a hearing was held on that matter on May 18,

2007. The plea agreement was not reduced to a writing prior to the plea being accepted, but the district court did summarize it in a written form, in his judgment upon the guilty pleas, as well as in his comments just prior to imposing sentence. Gibbs's public defender outlined the plea agreement in these terms:

Your Honor, the nature of the agreement is that the—the property destruction of the motorcycle would be reduced to a misdemeanor; that the defendant will plead guilty to that misdemeanor; that he will pay the full restitution of the motorcycle, which I believe is $1,059.

He will also plead guilty to a felony stalking case, which will run—and the sentence will run concurrent with that on the misdemeanor; that the burglary case would be dismissed. He would get treatment as designated by the ASI [Addiction Severity Index]. The State has agreed to recommend a split sentence involving VOA [Volunteers of America] thereafter, and that they've also agreed to allow him to remain out on bond provided there are no bond violations of any sort.

The prosecutor added this: "It would also obviously mean that he's to continue to lead a law-abiding life and have no contact with the victim in the stalking matter, Your Honor."

[¶ 5] At that hearing, Gibbs expressed concern about the status of his visitation with his son. His son was with his mother, and it was the mother that Gibbs was accused of stalking in violation of a protection order. The district court clarified for Gibbs:

... Sir, I need you to understand that insofar as almost all of this, the Court has no say in it. The one part the Court does have say in has to do with the sentencing. Whatever sentence you get, even if it's different than the recommendation, if I decide to give you a split sentence or not, if I decide to send you to VOA or not, if I decide that you're—whatever sentence you get on the motorcycle incident is going to run consecutive as opposed to concurrent, whatever I give you, you have to accept.

Sentencing is solely within the province of the Court.

I will listen to the recommendations and the reason for the recommendations. I will review the presentence investigation report from the Department of Corrections, sir. But at the end of the day, whatever orders I enter on sentence, even if they're different than that part of the plea agreement, you'll have to accept them.

Do you understand that?

Gibbs stated that he did understand, and the district court continued: "You will not be able to withdraw your plea of guilty and you won't be able to go back on this deal. Do you understand that?" Gibbs stated that he did understand. Furthermore, the district court explained to Gibbs, in great detail, the conditions to be imposed upon him during his release pending sentencing, including no contact with the mother of his son and no use or possession of alcohol or being in a place where alcohol is served. In closing, the district court queried: "I like to call this my favorite stupid question, but it's to make a point. Do you think it would be a good idea or bad idea for you to get in more trouble between now and the next time I see you?" Gibbs replied: "It would be the stupidest thing I've ever done in my life probably." Judgment was entered on the guilty pleas on June 11, 2007.

[¶ 6] On August 30, 2007, Gibbs appeared before the district court for sentencing. At the outset of those proceedings, the district court took note that Gibbs was released following entry of his guilty pleas but "he's had some additional complicating features that have placed him back in the custody of the sheriff."[1] The district court then asked for the State's recommendation and the prosecutor replied:

... At the time this plea bargain was entered into it contained both a charging [section] and a sentencing proposal to the Court. I feel Mr. Gibbs has violated both the spirit and the letter of the plea agreement, and I do not regard the sentencing agreement as being appropriate anymore.

---

1. That complicating factor appears to be that Gibbs was charged with concealing stolen property in the interim.

In that connection, Your Honor, I'd note to the Court that less than one month after he entered his pleas of guilty to these charges, we had filed a petition to revoke his bond because he had violated by drinking. He had violated it through apparent violence. He had violated the no-contact provision of his bond with the victim in this case, in the stalking case, and quite frankly, I think that his behavior, plus his prior record, leads to this recommendation:

That in docket 4679, the destruction of property case, he should receive a sentence of one year. Restitution should be awarded in the amount of $1,059 to [the victim].

And in docket number 4738, I believe he should be sentenced to no less than three nor more than five years. Said sentence to run concurrent to the sentence in docket 4679.

[¶ 7] In response, Gibbs's attorney argued strenuously that Gibbs be sentenced in accordance with the plea agreement, which had been reduced to writing by the district court. Furthermore, defense counsel contended that Gibbs's punishment should not be based upon unproven violations of the conditions of his release pending sentencing, or upon yet unproven criminal charges for which he might be punished in the future.

[¶ 8] Sentence was entered on September 7, 2007. Gibbs was sentenced to six months in jail on the misdemeanor property destruction charge. On the felony stalking charge, he was sentenced to three to six years of imprisonment. The sentences are concurrent. The sentences were stayed pending the outcome of Cr. 4861 (see Footnote 1, infra). Gibbs has not filed a motion in the district court to withdraw his guilty plea based on the circumstances of this case, as he perceives them.

## DISCUSSION

[¶ 9] The applicable standard of review is well-summarized in *Frederick v. State,* 2007 WY 27, ¶ 13, 151 P.3d 1136, 1141 (Wyo.2007):

When a plea of guilty is entered as a result of a plea agreement, any promises made by the State must be fulfilled and

whether a prosecutor has violated an alleged agreement is a question that is reviewed de novo. *Spencer v. State,* 2005 WY 105, ¶ 12, 118 P.3d 978, 982–983 (Wyo. 2005). A plea agreement is a contract between the defendant and the State to which the general principles of contract law are applied. "When determining whether a breach of the plea agreement has occurred we: '(1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered.'" *Ford v. State,* 2003 WY 65, ¶ 11, 69 P.3d 407, 410 (Wyo.2003). The prosecutor "must explicitly stand by" the terms of any agreement; and if the State is unable to carry out the terms, the correct remedy is withdrawal of the plea. *Ford,* ¶ 18, 69 P.3d at 412. The State may not obtain the benefit of the agreement and at the same time avoid its obligations without violating either the principles of fairness or the principles of contract law. *Id.*

[¶ 10] Moreover, we have held:

... In determining whether a breach has occurred, we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered. "'Principles of general contract law guide our analysis of the government's obligations under the agreement.'" *Clingman [v. State],* 2001 WY 46, ¶ 20, 23 P.3d [27,] 31 [ (Wyo.2001) ] (quoting [*United States v.*] *Peterson,* 225 F.3d [1167,] 1170–71 [ (10th Cir.2000), cert. denied, 531 U.S. 1131, 121 S.Ct. 893, 148 L.Ed.2d 799 (2001) ] ). It follows that, "as in contract," a party should not be released from its obligations under a plea agreement absent another party's material or substantial breach of that agreement. A material or substantial breach is one that goes to the whole consideration of the agreement. Several factors are relevant to whether a breach is material or substantial, including the extent to which the non-breaching party will be deprived of the benefit it reasonably expected and the extent to which the breaching party's con-

duct comports with the standards of good faith and fair dealing.

[¶ 11]   *Schade v. State,* 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo.2002) (citing *Browning v. State,* 2001 WY 93, ¶ 32, 32 P.3d 1061, [1071] (Wyo.2001)).

[¶ 12]   The procedures that govern plea agreements are well-defined in W.R.Cr.P 11(e):

(e)   *Plea Agreement Procedure.—*

(1) In General.—The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:

(A) Agree not to prosecute other crimes or move for dismissal of other charges; or

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of this case.

The court shall not participate in any such discussions.

(2) Disclosure of Agreement; Decision of Court.—If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, *in camera,* at the time the plea is offered.  **If the agreement is of the type specified in subdivision (e)(1)(A) or (e)(1)(C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.  If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant never-theless has no right to withdraw the plea.**  [Emphasis added.]

(3) Acceptance of Agreement.—If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

(4) Rejection of Agreement.—If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, *in camera,* that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and advise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

(5) Notification to Court.—Except for good cause shown, notification to the court of the existence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court.

[¶ 13]   When the proceedings at the change of plea hearing are considered in light of the district court's Judgment Upon Pleas of Guilty, to the extent the agreement was one identified by W.R.Cr.P. 11(e)(1)(A) or (C), it is clear that the district court deferred its decision as to the acceptance or rejection of the plea until there had been an opportunity for it to consider the presentence report.  To the extent that the plea was one identified in W.R.Cr.P. 11(e)(1)(B), the district court was very explicit in telling Gibbs that it was not bound by the plea agreement, and that he would not be allowed to withdraw the plea if the bargained for sentence was not imposed.  The presentence report indicated that the DOC had "no reason to disagree with the plea agreement."  However, the district court expressed its dissatisfaction with that report and gave Gibbs an opportunity to have a new report prepared.  Gibbs has not subsequently filed a motion to withdraw his guilty plea, so we are not confronted with any issue as to the trial court's abuse

of discretion in denying such a motion. We are persuaded that Gibbs did not comply with the terms of the plea bargain, and he was the first to breach it. That does not necessarily justify a breach by the State in the form it took in this case, but Gibbs was clearly on notice that the State's agreement was premised upon his obeying the law and the terms of his release on bond pending his sentencing hearing. Thus, the basis of our affirmance of the district court's sentence relies entirely upon the district court's compliance with the strictures of W.R.Cr.P. 11(e)(2). The district court, in effect, deferred its acceptance of the guilty plea until the time of sentencing and opted not to accept it in light of Gibbs's conduct in the month preceding his sentencing, and Gibbs was fully informed of the possibility that the district court would not accept the plea bargain and that he would not be permitted to withdraw his guilty plea if that was the ultimate result.

## CONCLUSION

[¶ 14] The judgment and sentence of the district court are affirmed.

BURKE, J., files a special concurrence, in which VOIGT, C.J., joins.

BURKE, Justice, specially concurring, with whom VOIGT, Chief Justice, joins.

[¶ 15] I concur in the result reached by the majority. I write separately because I do not agree with the path taken by the majority to reach its decision to affirm.

[¶ 16] The pivotal issue in this appeal, as identified by both parties, is whether the State breached the plea agreement. The majority opinion does not directly resolve this issue. Instead, it holds that the sentence should be affirmed solely because of "the district court's compliance with the strictures of W.R.Cr.P. 11(e)(2)." This holding implies that the State is free to breach a plea agreement so long as a defendant has been advised that the court is not bound by the agreement and the defendant has also been advised that he cannot withdraw his guilty plea if the court does not impose the recommended sentence. However, such an advisement is required in every plea agreement made pursuant to W.R.Cr.P. 11(e)(1)(B). If this advisement relieved the State of its obligation to comply with the plea agreement, it would render the State's promise to make a sentencing recommendation illusory.

[¶ 17] The court's discretion to accept or reject a sentence recommended pursuant to a plea agreement does not relieve the State from complying with that agreement. When a defendant enters a guilty plea in exchange for a promise from the State to recommend a specific sentence, the State is obligated to make the agreed-upon sentencing recommendation. The court has discretion to accept or reject the recommendation, but the defendant is entitled to have the court consider the State's recommendation when determining the appropriate sentence. This approach is consistent with our established precedent. "When a plea of guilty rests to any significant degree on a promise or agreement by the State, that promise must be fulfilled." *Herrera v. State*, 2003 WY 25, ¶ 8, 64 P.3d 724, 727 (Wyo.2003); *Rutti v. State*, 2004 WY 133, ¶ 42, 100 P.3d 394, 410 (Wyo.2004). "[A] prosecutor must explicitly stand by those terms agreed upon and may not play 'fast and loose' with the established terms reached between the parties in a plea agreement." *Herrera*, ¶ 18, 64 P.3d at 729. "[A] party should not be released from its obligations under a plea agreement absent another party's material or substantial breach of that agreement." *Browning v. State*, 2001 WY 93, ¶ 32, 32 P.3d 1061, 1071 (Wyo.2001); *Schade v. State*, 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo.2002); *Herrera*, ¶ 12, 64 P.3d at 727.

[¶ 18] Nevertheless, I would affirm the district court's decision because the record establishes that Mr. Gibbs materially breached the plea agreement prior to the time when the State was obligated to perform. "It is axiomatic that, if a defendant fails to comply with a plea agreement, the [S]tate is not bound by that agreement." *Schade*, ¶ 8, 53 P.3d at 555. I believe it is equally axiomatic, however, that when a defendant complies with a plea agreement, the State must also fulfill its part of the bargain. That obligation

is not negated just because the court has discretion to accept or reject the sentencing recommendation.